## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MATTHEW MARKOCH,** | : | **Civil No. 3:14-CV-00780** |
| | : | |
| **Plaintiff,** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **v.** | : | |
| | : | |
| **CAROLYN W. COLVIN,** | : | |
| Acting Commissioner of | : | |
| Social Security | : | |
| | : | |
| **Defendant.** | : | |

## <u>MEMORANDUM OPINION</u>

### I.   INTRODUCTION

The Plaintiff, Matthew Markoch, appeals from the unfavorable decision of the Commissioner of Social Security denying him benefits under Title II of the Social Security Act.  The jurisdiction of this Court is invoked pursuant to 42 U.S.C. §405(g). This matter has been referred to the undersigned United States Magistrate Judge for resolution on consent of the parties, pursuant to the provisions of 28 U.S.C. §636(c) and Rule 73 of the Federal Rules of Civil Procedure.  (Docs. 18, 19).

For the reasons stated herein, the final decision of the Commissioner will be **AFFIRMED**.

## II.   BACKGROUND AND PROCEDURAL HISTORY

The triggering incident that led Mr. Markoch to apply for benefits appears to have occurred on December 10, 2010, when Markoch presented to the emergency department while under the influence of bath salts. (Admin Tr. 139). Because Markoch's behavior was manic, and he had apparently ceased taking the medications prescribed by his treating psychiatrist Dr. Rinehouse, he was transferred to another facility for inpatient psychiatric care. ( Id.) Markoch remained in inpatient treatment for three days before being discharged. (Admin Tr. 133). Hospital records reflect that during this episode Markoch believed that he had crossed into heaven. (Admin Tr. 136). Markoch also recalled that while in the throes of this psychotic episode, he experienced an extended, drug-induced delusion that he was Jesus Christ. (Admin Tr. 240).

On January 26, 2011, Markoch filed a Title II application for disability insurance benefits ("DIB"), alleging that, beginning December 9, 2010, he was unable to work due to bipolar disorder and severe anxiety disorder. (Admin Tr. 113). His claim was initially denied on March 30, 2011. Markoch then sought, and was granted, an opportunity to have his claims evaluated during an administrative hearing. On September 5, 2012, Markoch, with the assistance of counsel, appeared and testified before an Administrative Law Judge ("ALJ") in Wilkes-Barre, Pennsylvania.

Impartial vocational expert ("VE") Karen Kane also appeared and testified at this hearing.

During the administrative hearing, Markoch testified that he has a high school education, can read and write, and can perform basic math. (Admin Tr. 31). Markoch also reported that, he met with a psychiatrist every six weeks, met with a social worker every "couple" of weeks, and attended daily meetings with a support group for recovering alcoholics. (Admin Tr. 32- 33). Markoch further reported that he was able to take care of his own personal hygiene but relied on his significant other, Bernice Markowski, to do most household chores. (Admin Tr. 33). Notes from therapy sessions with Licensed Clinical Social Worker ("LCSW") Joan Behm confirmed that Ms. Markowski did indeed complete most household chores, but that she did so based on her belief that Markoch does these chores incorrectly. (Admin Tr. 211). Markoch testified that he was taking several prescription medications to manage his symptoms, and admitted that his medications were "all doing their job." (Admin Tr. 36). However, he also reported that he experiences several side effects including sleep disturbance, weight gain, and tremors. Id.

Markoch reported that he had difficulty with social functioning. (Admin Tr. 38). He also attested to difficulty concentrating, and admitted that he lacked the ability to finish reading a book or newspaper. Id. Markoch reported difficulty with

3

pace and making judgments; he was asked to resign from a job when he was unable to meet productivity requirements. (Admin Tr. 39). Despite these limitations, therapy records revealed that in November 2011, Markoch began actively seeking part-time work. (Admin Tr. 211). Further, after he was asked to resign from a part-time job held he held for a few weeks in December 2011, Markoch continued to look for work and even received a call about a job interview in February 2012. (Admin Tr. 208, 209).

On November 19, 2012, the ALJ denied Markoch's application in a written decision. As a preliminary matter, the ALJ found that Markoch met the insured status requirement of Title II of the Social Security Act though December 31, 2014. (Admin Tr. 14). The ALJ then proceeded through each step of the five-step sequential evaluation process.

At step one, the ALJ found that Markoch did not engage in substantial gainful activity between December 9, 2010, and November 19, 2012. (Admin Tr. 14). At step two, the ALJ found that Markoch suffered from the medically determinable severe impairments of bipolar disorder and polysubstance abuse and dependence. (Id.)At step three, the ALJ found that, during the relevant period, Markoch did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Admin Tr. 14-16).

Before proceeding to step four, the ALJ found that Markoch had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with the following nonexertional limitations:

> the claimant is limited to simple, routine tasks of a low stress nature which is defined as only occasional decision-making and only occasional changes in the work setting.  He must avoid interaction with the public and can only occasionally interact with co-workers.

(Admin Tr. 16).  In doing so, the ALJ was required to weigh the medical an other opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.  The record in this case contains medical opinions by the following "acceptable medical sources:" treating psychiatrist Jeanne A. Rinehouse, M.D., (Admin Tr. 187-93); nontreating psychologist Jeffrey Fremont, Ph.D., (Admin Tr. 253-55); nontreating psychologist Thomas Smith, Psy.D., (Admin Tr. 234-42); and nonexamining psychologist John D. Chiampi, Ph.D.[1] (Admin Tr. 50-

---

[1] The Social Security Regulations discuss the nature of an acceptable medical source's treatment relationship with the claimant in terms of three broad categories: treating, nontreating, and nonexamining. A treating source is defined as an acceptable medical source who provides or has provided a claimant with medical treatment or evaluation, and who has or had an ingoing treatment relationship with the claimant. 20 C.F.R. §404.1502.  A nontreating source is defined as an acceptable medical source that has examined the claimant but did not have an ongoing treatment relationship – like a consultative examiner.  Id.  A nonexamining source is defined as an acceptable medical source that has not examined the claimant, but has provided an opinion in the case – like a state agency reviewing doctor.  Id.

52).  The examining sources also provided global assessment of functioning ("GAF")

scores.  Additionally, the record contains opinions by sources that are not considered

to be "acceptable medical sources," including a GAF assessment by LCSW Behm,

(Admin Tr. 221), and a function report by Ms. Markowski. (Admin Tr. 104-111).

At step four, the ALJ found that Markoch was unable to meet the demands of

his past relevant employment as a parts counter person.  (Admin Tr. 19).  At step five,

considering the above RFC and Markoch's vocational factors, and despite his inability

to perform his past work, the ALJ found that there was other work existing in

significant numbers that Markoch could do.  (Admin Tr. 20).  The ALJ based her

determination on testimony by a VE that an individual with the above RFC could

perform the representative occupations of video monitor, laundry folder, laundry

worker, and warehouse worker, which collectively exist in approximately 1,100 jobs

in the regional economy and in larger numbers in the state an national economy.

Following the ALJ's unfavorable decision, Markoch sought review by the

Appeals Council.  Markoch also submitted additional opinion evidence to the Appeals

Council that was not before the ALJ when she rendered her decision.  (Admin Tr. 5,

122-23). His request for review was denied on January 8, 2014.

On April 23, 2014, Markoch initiated this action by filing a complaint in which

he requests that we reverse the Commissioner's decision and enter an order awarding

benefits, or in the alternative vacate the decision of the Commissioner and remand for a new administrative hearing. (Doc. 1). On July 8, 2014, the Commissioner filed her answer, in which she contends that the final decision denying Markoch's application for benefits is supported by substantial evidence. (Doc. 8). Together with her answer, the Commissioner filed a copy of the administrative record. (Doc. 9). This matter has been fully briefed by the parties and is now ripe for decision. (Docs. 14, 15, 17).

## III.   DISCUSSION

Markoch asserts that the ALJ's conclusion at step five of the sequential evaluation process outlined below is not supported by substantial evidence. Specifically, Markoch alleges that the ALJ's assessment of his RFC is premised upon an improper evaluation of the medical and nonmedical source opinions of record. The Commissioner responds that the ALJ's evaluation of medical and nonmedical source opinions of record is proper, and is supported by substantial evidence.

### A.   STANDARDS OF REVIEW–THE ROLES OF THE ADMINISTRATIVE LAW JUDGE AND THIS COURT

Resolution of the instant social security appeal involves an informed consideration of the respective roles of two adjudicators–the ALJ and this court. At the outset, it is the responsibility of the ALJ in the first instance to determine whether a claimant has met the statutory prerequisites for entitlement to benefits. To receive

disability benefits, a claimant must present evidence which demonstrates that the claimant has an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a).

Furthermore,

[a]n individual shall be determined to be under a disability only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for his [or her], or whether he [or she] would be hired if he [or she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A); see also 20 C.F.R. §404.1505(a).  Last, to qualify for benefits under Title II of the Social Security Act, a claimant must also show that he or she contributed to the insurance program and became disabled prior to the date on which he or she was last insured.  42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

## 1.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

8

In making this determination the ALJ employs a five-step evaluation process to determine if a person is eligible for disability benefits. See 20 C.F.R. §404.1520; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999). If the ALJ finds that a claimant is disabled or not disabled at any point in the sequence, review does not proceed any further. See 20 C.F.R. §404.1520(a)(4). As part of this analysis the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant's impairment prevents the claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. Id.

Before considering step four in this process, the ALJ must also determine the claimant's residual functional capacity, or RFC. 20 C.F.R. §404.1520(e). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §404.1545. In making this assessment, the ALJ considers all of the claimant's impairments, including any medically determinable non-severe impairments. 20 C.F.R. §404.1545(a)(2). This disability determination involves shifting burdens of proof. The initial burden rests with the claimant to demonstrate that he or she is unable to engage in past relevant

work.  If the claimant satisfies this burden, then the Commissioner must show that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).

The ALJ's disability determination must also meet certain basic procedural and substantive requirements.  Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination.  Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."  Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981).  Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707.  In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding."  Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

**2.  GUIDELINES FOR THE ASSESSMENT OF MEDICAL AND**

### NONMEDICAL SOURCE OPINIONS

The Social Security Regulations define "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including … symptoms, diagnosis and prognosis, what [the claimant] can still do despite [his or her] impairment(s), and … physical or mental restrictions." 20 C.F.R. §404.1527(a)(2). The Social Security Regulations define "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R §404.1513.

It is clearly within the ALJ's authority to choose whom to credit when the record contains conflicting medical opinions. Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000). However, since it is apparent that the ALJ "cannot reject evidence for no reason or the wrong reason," Plummer, 186 F.3d at 429 (citing Mason, 994 F.2d at 1066), the ALJ must provide an explanation as to why opinion evidence by acceptable medical sources has been rejected so that a reviewing court can determine whether the reasons for rejection were proper. Cotter, 642 F.2d at 704, 707.

The Social Security Rulings and Regulations provide a framework under which medical opinion evidence must be considered. The Social Security Regulations also express a clear preference for opinions by treating sources. See Morales, 225 F.3d at

11

317 ("a cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation over a prolonged period of time."). Pursuant to 20 C.F.R. §404.1527(c)(2):

> if [the ALJ] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record, [the ALJ] will give it controlling weight.

Id.; see also SSR 96-2p, 1996 WL 374188. Furthermore, finding that the medical opinion of a treating source is not entitled to controlling weight does not mean the opinion should be rejected. SSR 96-2p, 1996 WL 374188, at *1. In many cases, a treating source's medical opinion will be entitled to great deference even where it is found to be non-controlling. Id.

Where the ALJ finds that no treating source opinion is entitled to controlling weight, the regulations provide that the weight of all non-controlling opinions by treating, examining, and non-examining medical sources should be evaluated based on the following factors: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §404.1527(c). In addition, the ALJ

should consider any other factors that tend to support or contradict the opinion that were brought to his or her attention.  20 C.F.R. §404.1527(c)(6).

Additionally, the ALJ must consider and should explain the weight accorded to opinions by medical professionals who are not "acceptable medical sources" – such as physicians' assistants or certified nurse practitioners – and non-medical sources, including opinions by a claimant's friend, neighbor, or family member.  See 20 C.F.R. §§404.1512, 404.1513(d); SSR 06-03p, 2006 WL 2329939, at *6.  These opinions are weighed using the same factors as medical opinions.   SSR 06-03p, 2006 WL 2329939, at *4.  However, unlike opinions by acceptable medical sources, opinions by other medical sources and non-medical sources cannot establish the existence of impairment.  Id. at *2.  Instead, medical and non-medical opinions by sources who are not considered to be acceptable medical sources under the Social Security Regulations – like the opinion offered by Ms. Markowski – may be used as a benchmark assess the credibility of a claimant's testimony about the intensity, persistence, and limiting effects of his or her impairments or in evaluating the weight of opinions by "acceptable medical sources."  Id. at *4 ("SSA's regulations include a provision that requires adjudicators to consider any other factors brought to our attention …opinions, from 'other sources" – both medical sources and 'non-medical sources' – can be important in this regard.").

13

### 3. JUDICIAL REVIEW OF ALJ DETERMINATIONS–STANDARD OF REVIEW

Once the ALJ has made a disability determination, it is then the responsibility of this Court to independently review that finding. In undertaking this task, this Court applies a specific, well-settled and carefully articulated standard of review. In an action under 42 U.S.C. §405(g) to review the decision of the Commissioner of Social Security denying a claim for disability benefits, the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. §405(g).

The "substantial evidence" standard of review prescribed by statute is a deferential standard of review. Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). When reviewing the denial of disability benefits, we must simply determine whether the denial is supported by substantial evidence. Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988); see also Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). It is less than a preponderance of the evidence but more than a mere scintilla of proof. Richardson v. Perales, 402 U.S. 389, 401 (1971). Substantial evidence means "such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Plummer, 186 F.3d at 427 (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)).

A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason, 994 F.2d at 1064. However, in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the decision] from being supported by substantial evidence." Consolo v. Federal Maritime Comm'n, 383 U.S. 607, 620 (1966). In determining if the ALJ's decision is supported by substantial evidence the court may not parse the record but rather must scrutinize the record as a whole. Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981); Leslie v. Barnhart, 304 F.Supp.2d 623, 627 (M.D.Pa. 2003).

The question before this Court, therefore, is not whether Plaintiff has been disabled since November 4, 2011, but whether the Commissioner's finding that he was not disabled prior to April 1, 2012, is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014)("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.")(alterations

omitted); Burton v. Schweiker, 512 F.Supp. 913, 914 (W.D.Pa. 1981)("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990)(noting that the scope of review on legal matters is plenary); Ficca v. Astrue, 901 F.Supp.2d 533, 536 (M.D.Pa. 2012)("[T]he court has plenary review of all legal issues . . . .").

### B.   THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION OF TREATING PSYCHIATRIST, DR. RINEHOUSE

As noted by the ALJ, Dr. Rinehouse first examined Markoch in June 2007, and diagnosed him with bipolar disorder and alcohol dependence (in remission). (Admin Tr. 187-88). During the relevant period, Markoch was treated by Dr. Rinehouse approximately once per month. (Admin Tr. 188). Dr. Rinehouse reported that, on March 9, 2011, Markoch appeared disheveled, seemed depressed, had a "blunted" affect, and reported "some" racing thoughts. (Admin Tr. 188-191). Dr. Rinehouse also observed that Markoch exhibited slightly increased psychomotor activity, normal speech, no hallucinations, depersonalization or derealization, acted appropriately, had adequate intelligence, good recent memory, good immediate retention and recall, fair insight, and good social and test judgment despite his poor impulse control, poor remote memory, and poor concentration. Id. Dr. Rinehouse opined that Markoch had

marked difficulty understanding, remembering and carrying out detailed instructions, making judgments on simple work-related decisions, and responding to changes and pressures in the workplace due to his anxiety and poor concentration. (Admin Tr. 192-93).

The ALJ explained that she accorded "little" weight to Dr. Rinehouse's opinions because there was "no explanation in terms of signs or laboratory findings" to support the doctor's assessment. (Admin Tr. 18). Markoch contends that the ALJ improperly "rejected" the opinion of Dr. Rinehouse because she failed to discuss the signs that were reported, or what signs the ALJ would expect to be present. (Doc. 3 pp. 3-8; Doc. 17 pp. 9).

The Social Security regulations provide that "signs" are:

anatomical, physiological, or psychological abnormalities which can be observed, apart from [a claimant's] statements (symptoms) ... Psychiatric signs are medically demonstrable phenomena that indicate specific psychological abnormalities, e.g., abnormalities of behavior, mood, thought, memory, orientation, development, or perception. They must also be shown by observable facts that can be medically described and evaluated.

20 C.F.R. §404.1528(b).

As discussed above, an ALJ is required to give good reasons in her decision for the weight given to a treating source's medical opinion. Further, her proffered rationale must be sufficiently specific to make clear to any subsequent reviewers the

17

weight the adjudicator gave to the treating medical source opinion.  Here, we find that the rationale cited by the ALJ for discounting this opinion is both proper and is sufficiently specific to permit judicial review. <u>See</u> 20 C.F.R. 404.1527(c)(3)("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.  The better an explanation a source provides for an opinion, the more weight we will give that opinion.").

Next we must turn our attention to whether the ALJ's assessment is supported by substantial evidence.  We find that it is.  Although Dr. Rinehouse did submit treatment records, these records are almost illegible and primarily consist of visits for medication management, where it was noted that Markoch "felt better" on January 27, 2011, and denied depression on February 16, 2011,  (Admin Tr. 173), and felt much more like himself on March 9, 2011 – approximately three months after his alleged onset date.   (Admin Tr. 171). Thus, the contemporaneous treatment notes are inconsistent with Markoch's claim of a disabling emotional decline. Instead, they noted that Markoch reported that his condition had actually improved at the time he filed for disability. Further, the clinical observations noted in the March 2011 examination report are mostly benign, and simply do not support the degree of limitation reflected in the accompanying medical source statement.

Given the equivocal and contradictory nature of these notes, we find that the ALJ did not err by discounting the opinion of Dr. Rinehouse.

### C.   THE ALJ PROPERLY EVALUATED THE MEDICAL OPINION OF NONTREATING PSYCHOLOGISTS, DOCTORS FREMONT AND SMITH

The record in this case contains medical opinions by two nontreating psychologists – Dr. Smith and Dr. Fremont.  Both doctors reported similar diagnostic impressions.   Dr. Smith assessed Bipolar I Disorder, Alcohol Dependency (in sustained remission), and Cannabis Dependency (in sustained remission). (Admin Tr. 241).   Dr. Fremont assessed Bipolar Disorder, Depression, and Multi-Substance Abuse (in sustained remission). (Admin Tr. 254).   Both doctors noted, on mental status examination, that Markoch was able to complete serial threes but not serial sevens, that Markoch was able to recall words or numbers immediately and after a short delay, and that Markoch was of average intelligence.  (Admin Tr. 239-40, 254). As a result of these observations, both doctors found that Markoch's memory was intact, and that he would be able to understand, remember, and carry out simple instructions with only slight to moderate difficulty. Id. Dr. Smith found that Markoch had "good" judgment, insight, and impulse control, and Dr. Fremont found that Plaintiff had "normal" social judgment, exhibited no signs of impulsivity, and had "fair to good" insight. Id.

Despite their similar clinical impressions, the doctors' medical source

statements reflect differing views of Markoch's functional abilities.  Dr. Smith found that Markoch was not more than moderately limited in any area, (Admin Tr. 234), while Dr. Fremont found that Markoch would have marked difficulty dealing with usual pressure at work, and marked difficulty making judgments on straightforward work-related decisions.[1]  (Admin Tr. 255).  In her decision, the ALJ was faced with the difficult task of choosing between these conflicting medical source statements and ultimately found that Dr. Smith's opinion was more consistent with the above clinical observations than Dr. Fremont's.  Therefore, the ALJ accorded "little" weight to the marked limitations in Dr. Fremont's opinion.  (Admin Tr. 18).  The ALJ explained that there were no signs of laboratory findings set forth to support the marked limitations, and noted that Dr. Fremont's assessment was based almost exclusively on Markoch's self-reporting.  Id.

Markoch contends that the ALJ's cited rationale for discounting portions of Dr. Fremont's report could apply equally to Dr. Smith's report.  (Doc. 14 p. 8, Doc. 17 p. 3).  He asserts that the ALJ failed to articulate her basis for crediting one opinion while rejecting a similar report that was more favorable to his claim. Id.  Markoch also insinuates that the ALJ rejected Dr. Fremont's opinion because the report was

---

[1]We note that Dr. Fremont also opined that Markoch would also have marked difficulty carrying out detailed instructions.  The ALJ's RFC assessment does not require the performance of anything beyond simple, routine tasks, thus would not require Markoch to understand "detailed" instructions.

privately obtained, while Dr. Smith's report was commissioned by the Social Security Administration.  Id.  We find that Markoch's argument lacks merit.

At the outset we note that, when faced with the task of weighing conflicting medical opinions, "the ALJ is not only entitled but required to choose between them." Cotter, 642 F.2d at 705.  Furthermore, after thoroughly reviewing each medical opinion and report, we find that the ALJ's cited rationale is sufficient to permit judicial review and is supported by substantial evidence.  After observing the same behaviors as Dr. Fremont, Dr. Smith opined that Markoch had only moderate difficulty dealing with pressure and making workplace judgments while Dr. Fremont opined that Markoch's difficulties in these areas would be "marked."  (Admin Tr. 234).  Presented with factual narratives by two health care providers which generally described Markoch's insight and judgment as "good", "normal" or "fair to good" wee find that the ALJ did not err in accepting Dr. Smith's more benign clinical assessment of these generally unremarkable narratives when determining Markoch's RFC. Accordingly, we find that the ALJ's interpretation that the marked difficulties found by Dr. Fremont were unsupported by and inconsistent with his clinical observations is supported by substantial evidence – namely, by the opinion of another medical source who, after making the same clinical observations, found only moderate limitations.

21

**D.    The ALJ Properly Evaluated the GAF Scores of Record**

A GAF score is a numerical summary of a clinician's judgment of an individual's psychological, social, and occupational functioning on a hypothetical continuum of mental health on a scale of one hundred.[1] See Diagnostic and Statistical Manual of Mental Disorders, 32-34(4th ed. text rev. 2000) (hereinafter "DSM-IV"). A score is placed in a particular decile if *either* symptom severity or the level of functioning falls with that range. Id. Where a claimant's scores in symptom severity and level of functioning are discordant, the GAF score will always reflect the worse of the two. Id. Thus, a GAF score may appear artificially low where a claimant functions at a high level despite his or her severe symptoms, or where the reverse is true. As early as 2001, the Social Security administration recognized that – though GAF scores must be addressed by the ALJ – they do not have a direct correlation to

---

[1] A GAF score of 21-30 represents behavior considerable influenced by delusions or hallucinations or serious impairment in communication or judgment or inability to function in almost all areas. DSM-IV at 34. A GAF score of 31-40 represents some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking or mood. *Id.* A GAF score of 41-50 indicates serious symptoms or any serious impairment in social, occupational, or school functioning. *Id.* A GAF score of 51-60 represents moderate symptoms or any moderate difficulty in social, occupational, or school functioning. *Id.* A GAF score of 61-70 represents some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well with some meaningful interpersonal relationships. *Id.* A GAF score of 71-80 represents transient symptoms, if present, and expectable reactions to psychosocial stressors or no more than slight impairment in social, occupational, or school functioning. *Id.*

the severity requirements or have case dispositive weight.  Shortly after the ALJ issued her decision in this case, the American Psychiatric Association published a new edition of the Diagnostic and Statistic Manual of Mental Disorders which abandons the use of the GAF scale.  In response, the Social Security Administration published an Administrative Message  to provide guidance to adjudicators on how to consider GAF scores when assessing disability claims involving mental disorders.  (See AM-13066, Doc. 14 p. 17-21)  This Administrative Message highlights the inherent problem with the use of GAF scores to evaluate disability – that there is not way to standardize a clinician's measurement or evaluation of the severity of a claimant's impairment under this scale. Id.  As such, because a GAF assessment is highly subjective, ALJ's were instructed to consider such scores as medical opinion evidence. Id. Thus, as with other opinion evidence, GAF scores are only credible to the extent the score is explained by the clinician and supported by or consistent with the objective medical evidence or record.

The Courts have taken a similar approach in reviewing an ALJ's assessment of a GAF score, even before the Social Security Administration issued its 2013 Administrative Message.  Courts have held that while an ALJ's failure to discuss a GAF score may warrant remand under some circumstances, see Irizarry v. Barnhart, 233 Fed. Appx. 189, 191 (3d Cir. 2007)(finding that the ALJ failed to follow the

mandates of <u>Cotter v. Harris</u> when he failed to discuss low GAF scores assessed by a treating source), remand is not required where the ALJ conducts a thorough analysis of the medical evidence regarding a claimant's mental impairments.  <u>Rivera v. Astrue</u>, 9 F.Supp. 3d 495, 506-07 (E.D.Pa. 2014); <u>see e.g.</u>, <u>Rios v. Comm'r of Soc. Sec.</u>, 444 Fed. Appx. 532, 534-35 (3d Cir. 2011); <u>Gilroy v. Astrue</u>, 351 Fed. Appx. 714, 715-16 (3d Cir. 2009)(holding that remand was not warranted where the ALJ failed to discuss a treating source GAF score because the ALJ made repeated reference to the source's reports and because the source failed to explain the basis for his GAF rating).

The record in this case contains multiple GAF scores from various sources. The majority of these GAF scores, however, assessed Markoch at a level where he could perform gainful activity. Further, the most adverse of these assessments was episodic in nature and took place during a manic episode resulting in a brief period of inpatient hospitalization in December 2010 after Markoch ingested bath salts. At that time Markoch was assigned a GAF score of 25.  (Admin Tr. 142).

Other scores, however, are generally consistent, and offer a more balanced, and positive view of Markoch's intellectual functioning. For example, non-acceptable medical source LCSW Behm assigned Plaintiff a current GAF of 60 on January 1, 2011, and noted that Markoch's highest GAF over the past year was 65.  (Admin Tr. 221). Nontreating psychologist, Dr. Smith, assigned Markoch a current GAF of 50 to

55 in April 2012.  (Admin Tr. 241).  A second examining psychologist, Dr. Fremont, assigned Markoch a GAF score of 50 in August 2012.  (Admin Tr. 254).  As noted by the ALJ, none of the providers set forth much explanation as to the basis for these scores, or reported whether there was any discordance between Markoch's symptom severity and level of functioning.  (Admin Tr. 19).  In her decision, the ALJ accorded "little" weight to the GAF score under 50 because it was "inconsistent with and not well supported by the objective examination findings."  (Admin Tr. 18); See 20 C.F.R. §404.1527(c)(4)("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").

In his argument, Markoch suggests that the ALJ erred in considering *any* GAF score, and failed to explain her rationale for crediting GAF scores of 50 or above.  We find that his argument lacks merit.  As discussed above, the relevant Social Security regulations mandate, and case law confirms, that an ALJ is *required* to consider all relevant evidence in the case record to assess a claimant's RFC.  20 C.F.R. §404.1545(a)(1).  Further, because, during the relevant period, the GAF scale was used by mental health professionals to assess current treatment needs and provide a prognosis, it is clearly relevant to Markoch's claim.  Thus, Markoch's assertion that – due to its highly subjective nature – a GAF score should not influence an ALJ's decision misconstrues the regulations.  Notwithstanding the fact that, subsequent to

the ALJ's decision, the GAF score was abandoned as an assessment tool by mental health clinicians, these scores were viewed by the ALJ merely as isolated pieces of evidence in an otherwise substantial record.  Accordingly, we find that the ALJ properly addressed the GAF scores of record, and identified that, the majority of GAF scores of record were consistent with the overall objective medical evidence. In this regard, we note that GAF scores like those frequently found here "in the range of 61–70 indicate 'some mild symptoms [of depression] or some difficulty in social, occupational, or school functioning.' Diagnostic and Statistical Manual of Mental Disorders ('DSM IV') 34 (American Psychiatric Assoc.2000). GAF scores in the 51–60 range indicate [only] moderate impairment in social or occupational functioning." Cherry v. Barnhart, 29 F. App'x 898, 900 (3d Cir.2002). Thus, these objective measures actually contradict a finding of total disability and support a conclusion that Markoch faced moderate impairment. See Smith v. Comm'r of Soc. Sec., CIV.A. 10–468 MLC, 2010 WL 4063347 (D.N.J. Oct.15, 2010). Indeed, the United States Court of Appeals for the Third Circuit has expressly endorsed this type of fact-finding by ALJs in the past, affirming the denial of benefits in cases in which claimants presented lower overall GAF scores. See, e.g., Rios v. Comm'r of Soc. Sec., 444 F. Appx. 532 (3d Cir.2011) (affirming Commissioner where, the record indicated that the plaintiff was assessed three GAF scores at different times of 50, 50, and 50–55

26

respectively); <u>Gilroy v. Astrue</u>, 351 F. App'x 714 (3d Cir.2009) (affirming ALJ decision denying disability benefits despite GAF of 45); <u>Glover v. Astrue</u>, CIV.A. 10–901, 2011 WL 1562267 (E.D.Pa. Mar.31, 2011) <u>report and recommendation adopted</u>, CIV.A. 10–901, 2011 WL 1597692 (E.D. Pa. Apr. 26, 2011(lowest identified GAF rating was 48). <u>DaVinci v. Astrue</u>, No. 1:11 CV 1470, 2012 WL 6137324, at *10 (M.D. Pa. Sept. 21, 2012) <u>report and recommendation adopted</u>, No. 1:11 CV 1470, 2012 WL 6136846 (M.D. Pa. Dec. 11, 2012)(GAF score of 60-65).

### E.      The ALJ Properly Evaluated the Medical Opinion of Nonexamining Psychologist, Dr. Chiampi

Markoch alleges that the ALJ erred in being "persuaded" by Dr. Chiampi's opinion that he is capable of meeting the mental demands of work.  His argument is twofold.  First he asserts that Dr. Chiampi's findings of fact on the issue of the nature and extent of his limitations are inconsistent with a finding at the initial level that Dr. Rinehouse's opinion should be accorded controlling weight.  Second he asserts that the ALJ misstated that Dr. Chiampi's opinion was consistent with the "other substantial evidence of record." (Admin Tr. 19).  We find that Markoch's assertions lack merit.

With respect to Markoch's assertion that the ALJ should have discounted Dr. Chiampi's assessment because it was internally inconsistent because Dr. Chiampi endorsed Dr. Rinehouse's opinion yet reached a different conclusion as to the degree

of many limitations in his own RFC assessment.   In response, the Commissioner

contends that, Dr. Chiampi's RFC assessment is consistent with Dr. Rinehouse's

medical source statement.   While we agree with Markoch that Dr. Rinehouse and Dr.

Chiampi disagreed in a number of areas in their competing assessments, we find that

the record does not support Markoch's allegation that Dr. Chiampi actually endorsed

Dr. Rinehouse's opinion.

It appears that a disability examiner consulted Dr. Chiampi at the initial stage

of administrative review.   In the explanation of the denial of Markoch's claim at that

level, Dr. Chiampi's signature appears in only two sections of the explanation – one

addressing the presence of medically determinable impairments, and one section on

Markoch's residual functional capacity.   Between the two sections signed by Dr.

Chiampi, there is an unsigned section entitled "assessment of policy issues," where

it is noted that Dr. Rinehouse's medical source statement is entitled to "controlling

weight."   Because this section of the disability section is not prepared or signed by Dr.

Chiampi – and the other two sections are – we find that this section was completed by

the disability examiner and not Dr. Chiampi.   Thus, because the section of the

disability explanation entitled "assessment of policy issues" is not part of Dr.

Chiampi's assessment, his opinion is not internally inconsistent.

With respect to Markoch's second argument – that the ALJ misstated that Dr.

Chiampi's opinion was consistent with the other substantial evidence of record – we find that this argument lacks merit. The also ALJ clearly explained that Dr. Chiampi's assessment was consistent with the evidence that the ALJ found to be credible (Dr. Smith's opinion, the credible GAF scores, and portions of Plaintiff's testimony). We agree, and find that the ALJ did not err by crediting this opinion to the extent that it is consistent with the other substantial evidence of record. See SSR 96-6p ("the opinions of State agency medical and psychological consultant and other program physicians can be given weight only insofar as they are supported by evidence in the case record, considering such factors as ... the consistency of the opinion with the record as a whole, including other medical opinions ...").

### F.  The ALJ Properly Evaluated Ms. Markowski's Function Report

Markoch contends that the ALJ cited an improper basis for discounting Ms. Markowski's March 2011 function report. (Doc. 14 p. 14). In her report, Ms. Markowski provided information relating to Markoch's daily activities, symptoms, and resultant functional limitations based on her personal relationship with Markoch as his fiancée and housemate. In this function report Ms. Markowski reported that Markoch could not hold a job, and that he was troubled by insomnia, poor concentration, focal deficits, depressed mood, and social withdrawal following a

manic episode due to bipolar disorder.  (Admin Tr. 104-111).  Ms. Markowski noted

that, as a result Markoch has difficulty remembering, completing tasks, concentrating,

understanding, following instructions, and getting along with others.  Id.  Despite

these limitations, Ms. Markowski reported that (weather permitting) Markoch goes out

for daily walks, is able to maintain his own person hygiene, complete basic household

chores and mow the lawn, is able to drive a car around town, attends daily church

services unaccompanied, attends weekly therapy sessions unaccompanied, and sees

a psychiatrist monthly.  Id.  Thus, the information provided by Ms. Markowski, like

much of the evidence tendered to the ALJ in this case, was highly equivocal and did

not compel a finding of disability.

The ALJ gave this equivocal evidence limited weight, and  explained that she

accorded "some" weight to statements made by Ms. Markowski about Markoch's

limitations, but noted that "by virtue of her relationship with the claimant, Ms.

Markowski cannot be considered a disinterested third party witness whose statements

would not tend to be colored by affection by the claimant" and that she would have

"a natural tendency to agree with the symptoms and limitations that the claimant

alleges." (Admin Tr. 19).

At the outset, we note that the ALJ correctly suggested that Ms. Markowski's

statements were echoed by Markoch's hearing testimony. We also find that this

evidence was equivocal and did not compel a finding of disability, either when considered in isolation or when examined in the context of all of the evidence in this case. While we agree with Markoch, that it would be improper for the ALJ to wholly discredit Ms. Markowski solely on the basis that she lives with and supports Markoch, and as such her opinions would be colored by her emotional and financial relationship with him,[2] we conclude in this case that the ALJ did not completely discount this testimony on these grounds. Rather, the ALJ afforded this equivocal information provided by Ms. Markowski limited weight.

"No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result."  Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989). Where an ALJ's treatment of an issue would not affect the outcome of the case, remand

---

[2] See Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996)("The fact that a lay witness is a family member cannot be a ground for rejecting testimony.  To the contrary, testimony from lay witnesses who see the claimant every day is of particular value; such lay witnesses will often be family members.")(internal citation omitted); Escardille v. Barnhart, No. 02-2930, 2003 WL 21499999 (E.D.Pa. Jun. 24, 2003)(noting that the ALJ improperly rejected testimony by a claimant's siblings because they had a vested interest in the claimant's finances); Cowart v. Comm'r of Soc. Sec., 2010 WL 1257343 at *8-9 (E.D.Mich. Mar. 30, 2010)(finding that the APL improperly imputed bias for lack of credibility based on a familial relationship); cf. Plummer, 186 F.3d ay 429 ("When a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'").

is not warranted.  Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005).  Bearing these principles in mind, we conclude that, although the ALJ's treatment of Ms. Markowski's statements, a treatment which gave the statement "some" weight, while noting Ms. Markowski's potential interest in the outcome of the case, does not compel a remand of this case. Although Markoch asserts that the ALJ's error is not harmless because Ms. Markowski's testimony lends significant additional support to Dr. Rinehouse's medical source statement, (Doc. 14 p. 15), we disagree.[3] As discussed above, the ALJ's rationale for discounting Dr. Rinehouse's medical opinion is legally sufficient and was supported by substantial evidence, thus the ALJ's failure to properly discount one piece of supporting evidence in an otherwise extensive record does not negate his conclusion.  Moreover, as a practical matter, it cannot be overlooked that, notwithstanding the basis cited to afford less weight to Ms. Markowski's function report, the ALJ did so only to a limited extent and ultimately accorded that opinion

---

[3]Markoch also compares the ALJ's allegedly improper rejection of Ms. Markowski's function report to the facts of Burnett, where the Third Circuit vacated the ALJ's decision because the ALJ failed to address certain lay opinion testimony when evaluating the credibility of the claimant's subjective testimony. See 220 F.3d 112. This case is distinguishable.  Unlike in Burnett, where there was no indication that the ALJ even *considered* the lay opinion testimony, here, the ALJ clearly considered Ms. Markowski's function report when he assessed the credibility of Markoch's testimony. (See Admin Tr. 16-17).  Moreover, Markoch has not raised any objection to the ALJ's assessment of the credibility of Markoch's subjective testimony, absent an objection to the legal sufficiency of the ALJ's credibility determination, we fail to see how that ALJ's failure to properly discount Ms. Markowski would alter the ALJ conclusion in this case.

"some" weight. Furthermore, the information from Ms. Markowski, viewed both in isolation and in conjunction with the other evidence, had a mixed and equivocal quality to it. That information, standing alone, would not have compelled a finding of disability. In addition, the administrative record in this case contained multiple, dispassionate professional assessments of Mr. Markoch's skills and limitations. While these various assessments reached competing conclusions regarding Markoch's ability to perform work, substantial evidence supported the ALJ's finding that Markoch was not disabled. The mixed information provided by Ms. Markowski did not dramatically change this otherwise sufficiently supported evidentiary calculus. Therefore, any alleged error in the treatment of this testimony would not call for a different outcome here.  As such, because there is no reason to believe that further consideration of this evidence might lead to a different result in this case we find that ALJ's error, if any, to be harmless.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, we will affirm the decision of the

Commissioner pursuant to 42 U.S.C. § 405(g).

An order consistent with this memorandum will be entered separately.


<u>**S/Martin C. Carlson**</u>
Martin C. Carlson
United States Magistrate Judge

**Dated:** May 18, 2015